Mr. Justice Morris
delivered the opinion of the Court:
This is an appeal from the decision of the Commissioner of Patents in an interference case.
The matter in controversy is an alleged improvement in knitting needles, effected by passing a wire around the heel or shank of the needle to form a collar in the shape of the figure 8, the better to hold it in place. It is defined by the Patent Office in these two issues:
“1. A knitting-machine needle of the class described having a collar applied to its heel between the limbs of the heel and embracing such limbs.
“2. A knitting-machine needle of the class described having a collar attached to its heel and between the limbs of the heel, and bent about such heel in the form of an 8.”
The difference between the two issues is that the first is more general than the second. The second is for a collar in the shape of the figure 8; the first would include collars in any shape that would be applied between the limbs and would embrace them.
All the tribunals of the Patent Officé concurred in holding that the appellee Woodward was the first to conceive and disclose the invention, as well as the first to reduce it to actual practice; but the examiner of interferences and the board of examiners in chief held that he was wanting in due diligence, and therefore awarded judgment of priority of invention to Newton, who was the first to apply to the Patent Office, and therefore to reduce the invention to constructive practice before Woodward had either applied to the office or effected his actual reduction to practice. This *570 decision was reversed by the Commissioner of Patents on appeal. He held that there was no unreasonable delay on Woodward’s part, and awarded to him the judgment of priority. From this decision the present appeal has been prosecuted.
As developed in the Patent Office, the history of the matter in brief ivas this: Woodward filed an application on April 13, 1896, which disclosed a collar attached to the heel of the needle and inserted between its limbs and so bent around it as to form the letter S; that is, the ends of the wire did not- entirely meet so as to form the figure 8, as in the present construction. It is shown, however, that what he actually disclosed to his attorney and that upon which the application was based was a collar in the shape of the figure 8. On February 16, 1897, Newton filed his application, in which he claimed both the S form and the • 8 form indifferently. Two successive interferences were declared between the parties; but both were dissolved, on Newton’s motion, on the ground that there was no interference in fact. Newton’s application then went to issue, and the final fee was paid;, but for some reason the patent was delayed. Woodward’s application, after some amendment not important here, also went to issue, and a patent was granted to him. Woodward then filed a new application (the one here involved) on June 13, 1898, his patent on the previous application not being issued until August 23, 1898. Newton’s application was thereupon withdrawn from issue, and was placed in interference with Woodward’s second application. This is the interference now before us.
In his preliminary statement Woodw’ard alleged conception and disclosure of the invention about January 1,1893, and the making by him at several times thereafter not specified of needles successfully used to test his invention, but that he. had not sold or used any, except by way of demonstration. Newton’s preliminary statement alleged conception and disclosure about the middle or latter part of *571 October, 1896, and that he commenced to manufacture needles embodying the invention about the middle of January, 1897. As his application was filed on February 16, 1897, he was undoubtedly diligent in his proceedings.
It is unnecessary for Woodward to prove conception and disclosure of the invention as early as 1893, or at any earlier date than April of 1896, when he claims to have disclosed it to his attorney for the application which was filed in the Patent Office on April 13, 1896. Newton did not come into the field of invention for more than one year and a half after that; and if Woodward had the invention then, and was diligent in the prosecution of it at and after the time of Newton’s arrival on the field, he should be regarded as entitled to the judgment of priority.
It does not seem to be very seriously controverted that Woodward had the invention in April of 1896. All the tribunals of the Patent Office have so held on the testimony ; and we see no reason to question the correctness of that conclusion. In our opinion the only open question in the case is that of his diligence; and in this we concur in the conclusion reached by the Commissioner of Patents. The Commissioner has held, and it seems to us has very properly held, that the greater part of the delay was due, not to Woodward’s action or inaction, but to the course of action of the Patent Office in the matter.
Woodward has proved by ample evidence, that, what he showed to his attorney in April of 1896, and that for which he desired a patent, was precisely the device now in controversy, a collar in the shape of the figure 8. That his attorney, for reasons good or bad, sufficient or insufficient, modified his specifications or drawings, so as to show a device in the shape of the letter S, seems to us to be of no consequence. The applicant supposed that he was applying for a patent for that which he had invented; and we are of opinion that the specifications and claims of that application were broad enough to embrace this device. It was *572 supposed by the Patent Office itself that such was the fact; for he was twice put in interference with Newton, and this, of course, could onty have been based on the presumed identity of the claims of the two parties. It was only when. it was finally determined by the Patent Office that the S-shaped device and the 8-shaped device were distinct inventions and equally patentable, did it become incumbent upon Woodward to take steps for the protection of his invention as he had actually made it. We do not think that he is chargeable with any want of due diligence when he acquiesced in the rulings of the Patent Office. It having been shown that he was the first to conceive the invention, and that he was not chargeable with the delay which occurred in its prosecution, it follows that he was entitled, as the Commissioner found, to a judgment of priority.
We are all the more disposed to come to this conclusion, since we greatly doubt whether there is any patentable novelty in the claims of either party, — that is, any patentable distinction between the claims of the present application and the claims upon which the former patent was issued to Woodward. But the Patent Office has held that there is patentable difference; and we do not feel called upon to question that decision. In the case of Bechman v. Wood, 15 App. D. C. 484, we were constrained by the rules of law, as we understood them to be, to hold that under the circumstances existing in that case, neither party was entitled to a patent. But that case did not involve the question of the intrinsic patentability of the device, apart from the positions in which the parties had placed themselves ; and we have held that, in general, the question of patentability will not be considered in a case of interference. Hisey v. Peters, 6 App. D. C. 68; Doyle v. McRoberts, 10 App. D. C. 445.
We think that the decision of the Commissioner of *573 Patents in this case was right, and that it should be affirmed; and it is hereby affirmed.

The cleric of the court will certify this opinion, and the proceedings in the cause in this court, to the Commissioner of Patents, according to law.